*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

GARY LEE O'CONNELL,

      Defendant-Appellant.

UNPUBLISHED
February 6, 2020

No. 342071
Marquette Circuit Court
LC No. 17-055529-FC

Before: STEPHENS, P.J., and SERVITTO and KRAUSE, JJ.

PER CURIAM.

Defendant appeals by delayed leave granted[1] the judgment entered following his guilty plea to one count of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a). He was sentenced to life in prison without the possibility of parole as required under MCL 750.520b(2)(c)[2]. We affirm.

## I. BASIC FACTS

This case arises from defendant's sexual contact with a 10-year-old girl during the summer of 2016. The victim disclosed that defendant touched her vagina and breasts, that she had touched defendant's penis with her hands and mouth, and that defendant rubbed his penis against her vagina. At the time of this offense, defendant's criminal history included a prior conviction of CSC-I involving sexual intercourse with a 12-year-old female. During the course of the investigation, defendant admitted the crimes to the investigating officer and wrote two letters to

---

[1] *People v O'Connell*, unpublished order of the Court of Appeals, entered April 13, 2018 (Docket No. 342071).

[2] "For a violation that is committed by an individual 18 years of age or older against an individual less than 13 years of age, by imprisonment for life without the possibility of parole if the person was previously convicted of a violation of this section or section 520c, 520d, 520e, or 520g committed against an individual less than 13 years of age . . . ."

the victim and her parents expressing his remorse. Accordingly, defendant was charged, as a second habitual offender, with three counts of CSC-I.

In February 2017, defendant was arraigned by the district court, where he was advised of the charges against him, the maximum penalties, and his right to an attorney. Defendant declined the appointment of an attorney; however, the district court appointed an attorney to serve as his legal advisor to provide defendant with guidance even if defendant maintained that he wished to represent himself. In March 2017, defendant entered into a plea agreement where he agreed to plead guilty to one count of CSC-I, second offense, in exchange for dismissal of all other charges arising out of the same incident. At that time, his legal advisor confirmed that defendant was making this decision after being advised of the consequences and without any concerns related to competency, and the trial court once again confirmed that defendant wished to proceed without counsel.

While entering his plea, defendant asserted that he was "guilty with confusion," and clarified that he was confused about why he committed the crime. However, he confirmed that he had committed the charged crime and that he was not confused about his desire to plead guilty. Defendant agreed that he understood that the minimum sentence was life in prison without the possibility of parole, and expressed that he wanted to be "locked up." Defendant explained to his legal advisor that this was the only way to keep him from re-offending.

Nonetheless, at his first sentencing hearing, defendant appeared to express some doubt about whether he should proceed without counsel, and the circuit court appointed defendant's legal advisor as his counsel going forward. However, when defendant returned before the circuit court for sentencing, counsel confirmed that defendant still wished to proceed with sentencing, and defendant reaffirmed his guilty plea. Defendant then made the following statement:

> Well, um, I just want to let the victims know that I'm sorry. And, you know, it's —it's kind of hard for me to discuss what's going through my mind and the way I feel. And I tried to seek help before I did this, but the mental health service and the psychiatrist and the counselors that I was trying to talk to said I wasn't—I didn't meet the criteria or the quota, whatever. And I've been diagnosed with depression, posttraumatic stress disorder, anxiety, learning disability. You name it, I have it. I know that what I did was wrong, but at the time I was looking for love, and I found it for five minutes. After that, I beat the shit out of myself, mentally. And I feel that this sentencing will give me peace of mind, not only from myself to hurt somebody else, but from society.

Thereafter, the circuit court sentenced defendant to the mandatory sentence of life in prison.

Several months later, defendant filed an application for delayed leave to appeal with this Court. Once granted, defendant filed a motion for withdrawal of his plea and a request for an evidentiary hearing in the trial court to address whether appointed trial counsel was ineffective for failing to seek a competency evaluation and a withdrawal of defendant's plea. The trial court

granted the request for an evidentiary hearing and a *Ginther*[3] hearing was held in October 2018. The circuit court denied defendant's motion to withdraw his guilty plea and concluded that trial counsel did not have a basis for filing a motion for a competency hearing or a motion to withdraw the plea.

## II. WAIVER OF RIGHT TO COUNSEL

Defendant argues that the circuit court erred when it accepted defendant's waiver of counsel because his decision to waive counsel was not voluntary or understanding. Defendant posits that although defendant's mental illness was not readily apparent at the time of his waiver of counsel, it was clear during defendant's plea that defendant was not making rational decisions and the circuit court should not have allowed defendant to proceed without counsel. We disagree.

When assessing the validity of a defendant's waiver of the right to counsel, this Court reviews de novo the entire record to determine whether the circuit court's factual findings regarding the waiver were clearly erroneous. *People v Williams*, 470 Mich 634, 640; 683 NW2d 597 (2004). A finding is clearly erroneous when, although there is evidence to support it, this Court, on the whole record, is left with a definite and firm conviction that a mistake was made. *People v Lee*, 314 Mich App 266, 272; 886 NW2d 185 (2016).

Defendants in criminal cases are guaranteed the right to have the assistance of counsel. See Const 1963, art 1, § 20. This includes the right to have counsel appointed at public expense for indigent defendants. See *People v Russell*, 471 Mich 182, 187-188; 684 NW2d 745 (2004). Further, criminal defendants also have the right to self-representation. See Const 1963, art 1, § 13; *Russell*, 471 Mich at 190-192. In *Russell*, our Supreme Court clarified that in order to allow a defendant's request for self-representation,

> a court must determine that (1) the defendant's request is unequivocal, (2) the defendant is asserting his right knowingly, intelligently, and voluntarily through a colloquy advising the defendant of the dangers and disadvantages of self-representation, and (3) the defendant's self-representation will not disrupt, unduly inconvenience, and burden the court and the administration of the court's business.

> In addition, a circuit court must satisfy the requirements of MCR 6.005(D), which provides in pertinent part as follows:

>> The court may not permit the defendant to make an initial waiver of the right to be represented by a lawyer without first

>> (1) advising the defendant of the charge, the maximum possible prison sentence for the offense, any mandatory minimum sentence required by law, and the risk involved in self-representation, and

---

[3] *People v Ginther,* 390 Mich 436; 212 NW2d 922 (1973).

(2) offering the defendant the opportunity to consult with a retained lawyer or, if the defendant is indigent, the opportunity to consult with an appointed lawyer. [*Id*. at 190-191.]

Further, our Supreme Court has recognized that a defendant has the free choice to refuse the services of appointed counsel and represent himself so long as the waiver is knowing and intelligent, and the defendant "knows what he is doing and his choice is made with eyes open." *Williams*, 470 Mich at 641-642 (quotation marks and citation omitted).

Aside from claiming that he was incompetent at the time of his waiver, defendant does not present any facts to support a conclusion that his waiver of counsel was not intelligent, knowing, and voluntary, and we find no evidence in the record to support such a claim. Rather, both the district court and circuit court carefully imparted the information encompassed by MCR 6.005(D) by informing defendant of the charges against him and the maximum penalties, and, despite defendant's position that he did not want an attorney, the district court appointed counsel to serve as a legal advisor to defendant and consult with defendant about the charges. Defendant expressly acknowledged his right to counsel and continued to decline representation at both his arraignments despite being reminded of his right to counsel and the mandatory penalty of life in prison without the possibility of parole. Defendant verified that he could read and write and had received his GED. Further, defendant's legal advisor confirmed that defendant's decisions were made "after being fully advised of the consequences."

Accordingly, the record supports a conclusion that the court went to great lengths to ensure that defendant's waiver of counsel was knowingly, intelligently, and voluntarily made. Further, as defendant concedes, there was no evidence of incompetence during defendant's waiver of counsel. In sum, defendant had the free choice to refuse the services of appointed counsel, and the circuit court did not err in accepting defendant's waiver of counsel.

## II. GUILTY PLEA

Defendant argues that because he was incompetent to stand trial, he was also incompetent to enter a plea and as a result, the trial court should have allowed him to withdraw his guilty plea. Further, defendant argues that the circuit court erred in accepting his plea because it was not understanding, accurate, and voluntary. We disagree.

When a motion to withdraw a guilty plea is made after sentencing, the decision whether to grant it rests within the sound discretion of the circuit court, and it will not be disturbed on appeal unless there is a clear abuse of discretion resulting in a miscarriage of justice. *People v Effinger*, 212 Mich App 67, 69; 536 NW2d 809 (1995). Further, the determination of a defendant's competence is within the circuit court's discretion, and will only be reversed where there is an abuse of discretion. *People v Kammeraad*, 307 Mich App 98, 138; 858 NW2d 490 (2014). An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes. *Id*. at 140.

An incompetent defendant "shall not be proceeded against while he is incompetent." MCL 330.2022(1). "[A] defendant is presumed competent to stand trial unless his mental condition prevents him from understanding the nature and object of the proceedings against him or the court

determines he is unable to assist in his defense." *People v Mette*, 243 Mich App 318, 331; 621 NW2d 713 (2000), citing MCL 330.2020. Either the court or any party may raise the issue of a defendant's competence to stand trial. MCL 330.2024. Further, the determination of a defendant's competence is within the lower court's discretion. *Kammeraad*, 307 Mich App at 138. The trial court has an obligation to raise the issue of incompetence where facts raise a "bona fide doubt" as to the defendant's competence. *Id*. "The test for such a bona fide doubt is whether a reasonable judge, situated as was the trial court judge whose failure to conduct an evidentiary hearing is being reviewed, should have experienced doubt with respect to competency to stand trial." *Id*. at 138-139 (citation and quotation marks omitted). We are aware that a significant portion of this state's prison population suffers from some form of mental illness. Often the mental illness was either undiagnosed or untreated prior to commitment to the Department of Corrections. Defendant's irrational behavior, demeanor, and prior medical record are relevant to the inquiry as to the defendant's competency. *Id*. at 139. "However, the decision as to the existence of a 'bona fide doubt' will only be reversed where there is an abuse of discretion." *Id*. at 138 (citation omitted).

Defendant argues that the circuit court should have raised the issue of competency when defendant accepted an unfavorable plea. However, during defendant's exchange with the circuit court, defendant assured the circuit court that he understood the nature of the charges and, understood the penalty for entering a guilty plea. Defendant's understanding of the nature of his crimes was further buttressed by the letters that he wrote to the victim and her parents. We appreciate the argument that assisting counsel's understanding of when a competency hearing should be requested was simplistic and revealed little understanding of the complicated issue of mental illness. Like the general public, most members of the bench and bar have a very limited understanding of the myriad issues surrounding mental illness. A more robust education regarding mental illness would benefit us all.

Defendant's claim of incompetence is based on statements that he was diagnosed with depression, anxiety, and post-traumatic stress disorder, prior to entry of his plea. No documentation was ever provided to the court or counsel to substantiate those claims. Moreover, even if documentation had been provided, a history of mental illness is not alone sufficient to establish incompetency, but rather there must be some indicia of a need for a competency hearing. See *Mette*, 243 Mich App at 331-332. In this case, defendant's behavior did not raise a bona fide doubt that he was incompetent at the time he entered his plea. He did not exhibit any inappropriate physical behavior. He gave responsive answers to the court's extensive questioning. Further, the record does not contain evidence that he could not or did not communicate with his counsel.

On the basis of the facts in the record, the circuit court's conclusion that defendant was capable of understanding the nature of the charges brought against him and capable of rationally assisting in his defense did not fall outside the range of reasonable and principled outcomes. A reasonable judge, situated as the circuit court judge here, could logically have rejected the proposition that defendant was "incapable because of his mental condition of understanding the nature and object of the proceedings against him or of assisting in his defense in a rational manner." MCL 330.2020(1). The range of reasonable and principled decisions included a finding that defendant intentionally and purposefully entered a guilty plea to avoid circumstances in which he might re-offend, and not because of a mental condition or illness. The circuit court was able to personally observe defendant's behavior and conduct, hear defendant's remarks in person, including the tone and inflections in his voice, and directly assess defendant's demeanor, attitude,

and comments. This Court generally defers to the trial court's findings on such matters. See MCR 2.613(C) ("regard shall be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it").

Further, as noted above, the record reflected that defendant could read and write and had obtained his GED while in prison. This information further suggests that defendant had the capacity to understand the nature of the charges and to rationally assist in his defense. MCL 330.2020(1). However, despite this capacity and ability, defendant chose not to proceed with trial. To the extent that defendant made occasional statements about confusion and his mental state, this Court defers to the circuit court's determination following its personal observation of defendant and conclusion that defendant was confused about why he continued to commit offenses against children. In short, defendant has failed to overcome the presumption that he was competent to stand trial, and the circuit court did not err by not ordering a competency examination or by accepting defendant's guilty plea.

Defendant also argues that the circuit court erred in accepting his plea because it was not understanding, accurate, and voluntary. Again, we disagree.

Indeed, a court may not accept a plea of guilty unless it "is understanding, voluntary, and accurate." MCR 6.302(A). For a plea to be understanding, the defendant must be informed of the maximum possible prison sentence, as well as any mandatory minimum sentence required by law. MCR 6.302(B)(2); *People v Brown*, 492 Mich 684, 689; 822 NW2d 208 (2012). For a plea to be voluntary, the terms of the plea agreement must be disclosed, and the plea must be the "defendant's own choice." MCR 6.302(C)(4)(c). For a plea to be accurate, the court must establish support for a finding that defendant is guilty of the offense to which defendant is pleading. MCR 6.302(D)(1).

As stated above, defendant has provided no evidence that he was incompetent at the time he entered his plea. Again, the court made numerous statements about the mandatory penalty of life in prison without parole, and defendant stated that he understood the consequences of his guilty plea and was aware of the mandatory life sentence he would receive as a result. A defendant is not permitted to claim that he or she was confused about the consequences of a plea after stating on the record that he or she understood the same. *People v Everard*, 225 Mich App 455, 460-461; 571 NW2d 536 (1997). Further, defendant also confirmed that it was his choice to enter the plea and that the plea was not the result of any promises, inducements, or threats. Furthermore, defendant admitted that he committed the crime to which he was pleading. Accordingly, because defendant's plea was voluntary, understanding, and accurate, the circuit court did not err in accepting defendant's plea.

In sum, defendant's argument that he was incompetent at the time he entered his plea fails because the record contains numerous statements showing that defendant entered the guilty plea understandingly and voluntarily, and defendant has failed to provide any evidence to the contrary.

III. INEFFECTIVE ASSISTANCE OF COUNSEL

Lastly, defendant posits that trial counsel was ineffective by failing to request a competency evaluation and failing to request withdrawal of defendant's guilty plea once he was appointed. We disagree.

Generally, the determination of whether a defendant has been deprived of the effective assistance of counsel presents a mixed question of fact and constitutional law. See *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). When the circuit court has held a *Ginther* hearing, the circuit court must first find the facts and then decide whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). Thereafter, this Court reviews the circuit court's factual findings for clear error, while its constitutional determinations are reviewed de novo. *Trakhtenberg*, 493 Mich at 47. Regard should be given to the circuit court's opportunity to assess the credibility of the witnesses who appeared before it. MCR 2.613(C). A finding is clearly erroneous when, although there is evidence to support it, this Court, on the whole record, is left with a definite and firm conviction that a mistake was made. *Lee*, 314 Mich App at 272.

A defendant has the right to the effective assistance of counsel. US Const, Ams VI and XIV; Const 1963, art 1, § 20; *People v Vaughn*, 491 Mich 642, 669; 821 NW2d 288 (2012). Generally, to establish ineffective assistance of counsel, a defendant must show (1) that counsel's performance was below an objective standard of reasonableness under prevailing professional norms; (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different; and (3) that the resultant proceedings were fundamentally unfair or unreliable. *People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v Washington*, 466 US 668, 684; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "Effective assistance of counsel is presumed, and a defendant bears a heavy burden of proving otherwise." *People v Mack*, 265 Mich App 122, 129; 695 NW2d 342 (2005). When ineffective assistance of counsel is claimed in the context of a plea, the pertinent inquiry is whether the defendant tendered the plea voluntarily and understandingly. *People v Armisted*, 295 Mich App 32, 48; 811 NW2d 47 (2011).

Defendant first argues that trial counsel was ineffective for failing to request a competency evaluation. However, as discussed above, defendant has failed to establish that he should have been given a competency evaluation. Accordingly, on the basis of the record and the findings above, we cannot conclude that defense counsel's failure to request a competency examination constituted deficient performance, namely, that counsel's performance fell below an objective standard of reasonableness. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) (recognizing that defense counsel does not have an obligation to advance a meritless argument).

Further, defendant argues that trial counsel was ineffective by failing to request withdrawal of defendant's guilty plea once he was appointed. However, there is no absolute right for a defendant to withdraw a guilty plea after it has been accepted. *People v Harris*, 224 Mich App 130, 131; 568 NW2d 149 (1997). Additionally, the record suggests that defendant himself would have opposed such a motion given his desire to reaffirm his plea instead. Accordingly, the result of the proceedings would not have been different. Moreover, as noted above, defendant explained his motivation for pleading guilty to trial counsel, and defendant's plea was voluntary and understanding. Therefore, in whole, defendant has not established ineffective assistance of counsel.

Affirmed.

/s/ Cynthia Diane Stephens
/s/ Deborah A. Servitto
/s/ Amy Ronayne Krause